UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLOIS BELL,

        Petitioner,

                           CASE NO. 2:10-CV-13467
v.                         JUDGE DAVID M. LAWSON
                           MAGISTRATE JUDGE PAUL J. KOMIVES

JEFFREY WOODS,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . 5
     C.   *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     E.   *Sufficiency of the Evidence (Claims I and IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
          1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
          2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
               a. Criminal Enterprise Conviction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
               b. Conspiracy Convictions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
     F.   *Included Offenses (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     G.   *Evidentiary Claims (Claims III & XI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
          1.   *Evidentiary Errors Generally* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
          2.   *Hearsay/Confrontation (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
               a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
               b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
          3.   *Exclusion of Evidence (Claim XI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
               a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
               b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
     H.   *Jury Instructions (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
          1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
          2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
     I.   *Sentencing (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
          1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
          2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
     J.   *Newly Discovered Evidence/Actual Innocence (Claim VIII)* . . . . . . . . . . . . . . . . . . . . 40
     K.   *Ineffective Assistance of Counsel (Claims VI, IX, X, and XII)* . . . . . . . . . . . . . . . . . . . 44
          1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
          2.   *Trial Counsel (Claims VI, IX, and X)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
               a. Preliminary Examination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

          b. Failure to Object to Jury Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
          c. Issues Relating to Fitchett Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
        3. *Appellate Counsel (Claim XI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
    L. *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
        1. *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
        2. *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
    M. *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
III.   <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

\*     \*     \*     \*     \*

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Clois Bell is a state prisoner, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan.

2.    On January 20, 2007, petitioner was convicted of one count of possession of a controlled substance less than 25 grams, MICH. COMP. LAWS § 333.7403(2)(a)(v); two counts of conspiracy to deliver a controlled substance less than 50 grams, MICH. COMP. LAWS §§ 333.7401(2)(a)(iv), 750.157a; two counts of delivery of a controlled substance less than 50 grams, MICH. COMP. LAWS § 333.7401(2)(a)(iv); and one count of conducting a criminal enterprise, MICH. COMP. LAWS § 750.159i(1), following a jury trial in the Bay County Circuit Court. On March 8, 2007, he was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of 34-180 months' imprisonment on the possession conviction, 76-240 months' imprisonment on each conspiracy conviction, 114-240 months' imprisonment on each delivery conviction, and 260-480 months' imprisonment on the criminal enterprise conviction.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      MR. BELL'S CRIMINAL ENTERPRISE CONVICTION MUST BE
        VACATED BECAUSE THE EVIDENCE PRESENTED AT TRIAL WAS
        NOT SUFFICIENT TO SUSTAIN THE VERDICT.

II.     MR. BELL'S DELIVERY AND CONSPIRACY CONVICTIONS MUST
        BE VACATED BECAUSE THEY ARE NECESSARILY INCLUDED
        LESSER OFFENSES OF THE CRIMINAL ENTERPRISE CONVICTION
        AND PEOPLE V. MARTIN, 271 MICH APP 280 (2006), WAS WRONGLY
        DECIDED.

III.    THE TRIAL JUDGE REVERSIBLY ERRED BY ADMITTING EXTRA-
        JUDICIAL STATEMENTS WHICH VIOLATED THE HEARSAY RULE
        AND MR. BELL'S SIXTH AMENDMENT RIGHT TO CONFRONT THE
        WITNESSES AGAINST HIM.

IV.     MR. BELL'S CONSPIRACY TO DELIVER COCAINE CONVICTIONS
        MUST BE VACATED BECAUSE THE PROSECUTION'S PROOFS DID
        NOT ESTABLISH ANYTHING MORE THAN A BUYER-SELLER
        RELATIONSHIP.

V.      MR. BELL WAS DENIED HIS FEDERAL AND STATE
        CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW BECAUSE
        THE TRIAL JUDGE FAILED TO PROPERLY INSTRUCT THE JURY ON
        THE ELEMENTS OF THE CHARGED OFFENSES.

VI.     REVERSAL IS REQUIRED BECAUSE TRIAL COUNSEL'S DEFICIENT
        PERFORMANCE DENIED MR. BELL HIS FEDERAL
        CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF
        COUNSEL.

VII.    RESENTENCING IS REQUIRED BECAUSE THE PRESIDING JUDGE
        BASED HIS EXERCISE OF SENTENCING DISCRETION ON
        INACCURATE/MISLEADING/UNSUBSTANTIATED INFORMATION,
        AND THE 260 MONTH MINIMUM SENTENCE IMPOSED WAS
        EXCESSIVE AND DISPROPORTIONATE.

The court of appeals found no merit to petitioner's claims, and affirmed his convictions and

sentences. *See People v. Bell*, No. 277554, 2008 WL 4604071 (Mich. Ct. App. Oct. 16, 2008) (per

curiam).

        4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The

3

Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Bell*, 483 Mich. 1018, 765 N.W.2d 312 (2009).

5.      On August 23, 2010, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.      DEFENDANT HAS NEWLY DISCOVERED EVIDENCE TO SUPPORT HIS CLAIMS OF ACTUAL INNOCENCE.

II.     DEFENDANT WAS DENIED HIS UNITED STATES SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DURING HIS PRELIMINARY EXAMINATION BY COUNSEL'S FAILURE TO INVESTIGATE OR INTERVIEW OR SECURE A SWORN STATEMENT FROM A RES GESTAE WITNESS.

III.    DEFENDANT WAS DENIED HIS UNITED STATES SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO SEEK A CONTINUANCE, PROPERLY PREPARE AND FOR FAILING TO HOLD THE PROSECUTION TO ITS DUTIES TO PRODUCE A RES GESTAE WITNESS.

IV.     THE TRIAL COURT COMMITTED ERROR AND ABUSED ITS DISCRETION BY REFUSING TO ALLOW THE TRIER OF FACTS THE JURY [sic] TO HEAR THE TESTIMONY TAKEN DURING THE PLEA AGREEMENT PROCEEDINGS BY DEFENDANT'S ALLEGED CO-CONSPIRATOR, FAILING TO ALLOW A WRITTEN STATEMENT SIGNED BY DEFENDANT'S ALLEGED CO-CONSPIRATOR TO BE INTRODUCED AS EVIDENCE, AND FOR SUA SPONTE DECLARING A WITNESS UNAVAILABLE BASED ON THE COURT'S MISTAKEN BELIEF THAT THE WITNESS WOULD OR COULD INVOKE HIS FIFTH AMENDMENT RIGHTS.

V.      DEFENDANT HAS ESTABLISHED GOOD CAUSE AND PREJUDICE BASED ON [IN]EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL DURING HIS APPEAL OF RIGHT. WHEREAS, APPELLATE COUNSEL OMITTED DEAD BANG WINNERS, WHICH ANY LAWYER WITH AVERAGE SKILL AND TRAINING IN MATTERS OF LAW WOULD NOT HAVE EXCLUDED.

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

eight days later, on August 31, 2010. As grounds for the writ of habeas corpus, he raises the seven claims he raised on direct appeal and the five claims he raised in his motion for relief from judgment. On the same date, petitioner filed a motion to hold the proceedings in abeyance pending exhaustion of the claims raised in his motion for relief from judgment. The Court granted the motion to stay on September 13, 2010.

7.      On December 15, 2010, the trial court denied petitioner's motion for relief from judgment, concluding that each of the claims raised by petitioner was without merit. *See People v. Bell*, No. 06-10684 (Bay County, Mich., Cir. Ct. Dec. 15, 2010) [hereinafter "Trial Ct. op."]. The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders. *See People v. Bell*, 493 Mich. 855, 820 N.W.2d 801 (2012); *People v. Bell*, No. 305556 (Mich. Ct. App. Feb. 14, 2012).

8.      On October 22, 2012, petitioner filed a motion to lift the stay, and on October 26, 2012, the Court granted the motion.

9.      Respondent filed his answer on October 1, 2013. He contends that petitioner's first, fifth, and eleventh claims are barred by petitioner's procedural default in the state courts, and that all of petitioner's claims are without merit.

10.     Petitioner filed a reply to respondent's answer on November 13, 2013.[1]

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from a series of drug transactions involving petitioner, his co-

---

[1]Petitioner did not mail his reply, which is dated November 13, 2013, to the Clerk. Rather, he mailed copies directly to me and to the District Judge. As a result, the reply was not entered on the Court's docket. On today's date, I have directed the Clerk to file the reply brief, and thus the docket reflects today's date as the filing date of the reply.

defendant Rodolpho Fitchett,[2] and others.  The evidence adduced at trial was summarized by the

Michigan Court of Appeals:

> Defendant arranged for Fitchett to stay with Daniel Gonzales. According to Gonzalez, defendant appeared at his house every couple of days to speak with Fitchett. While Gonzalez never saw defendant give any cocaine to Fitchett, Gonzalez "knew that [defendant] was giving it to [Fitchett]," because whenever Gonzalez asked Fitchett for cocaine, Fitchett replied that he would not have any until defendant arrived, and after defendant would leave Gonzales's house, Fitchett would give cocaine to Gonzales. In addition, the police informant testified that on June 21, 2006, and June 27, 2006, he went to Gonzales's home to purchase cocaine from Fitchett. On the first visit, when the informant arrived at Gonzales's home, he and Fitchett waited for defendant to arrive because Fitchett "didn't have anything." After defendant and Fitchett met in private, Fitchett gave the informant the cocaine. On the second visit, when the police informant arrived with $440, Fitchett only had $100 worth of cocaine, but he called defendant and asked defendant to bring over more cocaine. After defendant arrived and met with Fitchett in private, Fitchett gave the remaining cocaine to the informant. Further, money recovered from defendant after his arrest matched the $440 the police informant used to purchase the cocaine on June 27, 2006.

*Bell*, 2008 WL 4604071, at *1.

The evidence was more fully summarized in petitioner's brief to the Michigan Court of

Appeals:

> With the exception of the possession offense, which arose out of a traffic stop during which police found a razor blade with traces of cocaine in Mr. Bell's wallet, the charges against Mr. Bell arose out of a series of controlled buys by a police informant.  The prosecution's theory of the case was that Mr. Bell supplied Rudolph Finchett with cocaine and Finchett in turn sold the cocaine to the police informant. The defense theory was that Mr. Bell did not sell cocaine to the informant or conspire with Finchett to do so.
>
> At trial, Richard Hager testified that he was a paid police informant with prior convictions for forgery, larceny in a building, felony receiving and concealing stolen property and pending forgery (three counts), uttering and publishing, breaking and entering, larceny in a building, and misdemeanor receiving and concealing stolen property charges.  On June 21, 2006, he went to 1000 Broadway to purchase cocaine

---

[2]Petitioner's co-defendant states his name as "Rodolpho Fitchett" in his affidavit.  Petitioner's brief on appeal identified the co-defendant as "Rudolph Finchett," and the Michigan Court of Appeals referred to the codefendant as "Adolpho Fitchett."

from "Javier" (subsequently identified as Rudolph Finchett) using police "buy" money. A hearsay objection to what Finchett told him was overruled. He said Finchett told him he was waiting for Mr. Bell because he did not have anything. He said that after Mr. Bell arrived he gave Finchett $40.00, and that Finchett met privately with Mr. Bell and then gave him a quantity of crack cocaine. He said he went back on June 22, 2006, and purchased $250.00 worth of crack cocaine from Finchett and went back again on June 26, 2006, and purchased $40.00 worth of crack from Ricky.

Hager said he attempted to purchase $500.00 worth of crack on June 27, 2006, but the police only had $440.00 available. He went to 1000 Broadway, and Finchett told him he only had $100.00 worth. He bought what was available. He said Finchett made a phone call, purportedly to Mr. Bell, and that Mr. Bell arrived after that. He said Mr. Bell asked him "What's up" and he replied "Three forty." He said he gave Finchett the remaining $340.00, Finchett and Mr. Bell went into another room, Finchett came out and gave him more crack.

Hager said he had met Finchett through Ricky G and his girlfriend. He said that Finchett made a phone call, purportedly to Mr. Bell whom he had only met once briefly and had not seen deliver any drugs, and was told "all right."

Daniel Gonzales testified that on June 26, 2006, he acted as a middleman for a crack cocaine purchase by Hager from Finchett which occurred at his house (1000 Broadway). He said Finchett told him Mr. Bell had said it was all right for Finchett to stay at his house. He agreed because Finchett agreed to give him some crack for allowing him to stay there. He said that after Finchett moved in, Mr. Bell would come over and talk to him every couple of days or "once in a while." He never saw Mr. Bell with cocaine, but Finchett would give him some after Mr. Bell's visits. He had been charged with delivery of cocaine, but had not been charged with being involved with a criminal enterprise even though he had allowed his house to be used for selling cocaine. He was not promised anything for his testimony, but was hopeful.

Other testimony established the following: Mr. Bell was arrested shortly after the June 27, 2006, buy and had the $440.00 Hager used to purchase the cocaine on him. Mr. Bell and Finchett drove to Saginaw together on June 22, 2006, and went to a "known drug area." On May 2, 2006, Mr. Bell was searched incident to his arrest and a razor blade with suspected cocaine residue was found. The razor blade seized on May 2, 2006, and the items Hager purchased on June 21, 22, 26, and 27, 2006, were tested and determined to contain the controlled substance cocaine.

Def.-Appellant's Br. on Appeal, in *People v. Bell*, No. 277554 (Mich. Ct. App.), at 1-3 (citations to trial transcript omitted).

C.    *Procedural Default*

Respondent contends that petitioner's first, fifth, and eleventh claims are barred by

petitioner's procedural default in the state courts.  Under the procedural default doctrine, a federal

habeas court will not review a question of federal law if the state court's decision rests on a

substantive or procedural state law ground that is independent of the federal question and is adequate

to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a

procedural default does not bar consideration of a federal claim on either direct or habeas review

unless the last state court rendering a judgment in the case 'clearly and expressly' states that its

judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly

established and regularly followed state practice' may be interposed by a State to prevent subsequent

review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)

(quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist.

Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the

procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-

established at the time of the petitioner's purported default.").  If a claim is procedurally defaulted,

a habeas court may not review the claim unless the petitioner establishes cause for, and prejudice

attributable to, the default, or that failure to consider the claim will result in a fundamental

miscarriage of justice.  *See Coleman*, 501 U.S. at 750.

Respondent contends that petitioner's first claim, alleging insufficiency of the evidence with

respect to the criminal enterprise conviction, is procedurally defaulted.  The Court should reject this

argument.  In resolving this claim, the Michigan Court of Appeals concluded, based on its rejection

of petitioner's statutory interpretation argument, that petitioner had "presented [the court] with no

legal basis for concluding that the evidence presented, when viewed in the light most favorable to

the prosecution, failed to establish that he did not engage in a pattern of racketeering, and we will

8

not search for authority to sustain defendant's position."  *Bell*, 2008 WL 4604071, at *3. Respondent contends that this constitutes an invocation of the procedural rule that a "'[d]efendant's failure to cite any supporting legal authority constitutes an abandonment of [an] issue.'"  Answer, at 28 (citing *People v. Watson*, 245 Mich. App. 572, 587, 629 N.W.2d 411, 422 (2001).  The Michigan Court of Appeals did not clearly and expressly invoke this procedural rule.  At no point did the court of appeals indicate that petitioner had waived, abandoned, or forfeited this issue.  In support of its statement that it would not "search for authority to sustain" petitioner's position, the court of appeals cited *People v. Cathey*, 261 Mich. App. 506, 510, 681 N.W.2d 661, 664 (2004). That case stated the rule identified by the court of appeals, but did not purport to hold that the defendant's claim in that case was waived, abandoned, or forfeited.  And the court of appeals's determination speaks to the merits, concluding that petitioner had presented no legally valid argument for "concluding that the evidence presented . . . failed to establish that he . . . engage[d] in a pattern of racketeering."  If the court of appeals was attempting to invoke a procedural bar, it did not do so clearly and expressly.  Accordingly, the Court should conclude that petitioner's first claim is not procedurally defaulted.

Respondent also contends that petitioner's fifth claim (alleging instructional error) and eleventh claim (alleging improper exclusion of evidence) are procedurally defaulted because petitioner failed to object to the alleged instructional error and waived his evidentiary claims. Although these claims are defaulted for the reasons suggested by respondent, the Court should nevertheless consider the claims on the merits.  While procedural issues in a habeas case should ordinarily be resolved first, procedural default is not jurisdictional, and "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable

9

against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Because it is clear that petitioner's defaulted claims are without merit, the Court may deny the claims on the merits without engaging in an extended analysis of whether petitioner can establish cause for his default or that a fundamental miscarriage of justice will occur by the failure to address his claims.[3]

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

---

[3]In particular, petitioner asserts that counsel was ineffective for failing to object to the jury instructions. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Consideration of counsel's effectiveness, however, depends in part on consideration of petitioner's underlying claims. Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted instructional error claim, it is better to simply consider the merits of this claim. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state

11

criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

12

Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Although petitioner's fifth and eleventh claims are procedurally defaulted, they are nonetheless subject to the deferential standard of review set forth in § 2254(d). With respect to petitioner's instructional error claim, the Michigan Court of Appeals addressed the merits of that claim in determining whether petitioner could establish plain error. Similarly, the trial court rejected petitioner's evidentiary claim on the merits as an alternative ground for decision. The Sixth Circuit has "squarely endorsed the view that 'a federal constitutional claim reviewed by a state court for "plain error" can be considered "adjudicated on the merits" for the purpose of receiving deference under AEDPA.'" *Bond v. McQuiggan*, 506 Fed. Appx. 493, 498 n.2 (6th Cir. Nov. 29, 2012) (quoting *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009)). Further, where a state court addresses the merits as an alternative ground for decision notwithstanding its application of a procedural bar, the alternative merits adjudication is considered "on the merits" for purposes of § 2254(d) and is entitled to deference under the AEDPA. *See Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008); *see also*, *Rolan v. Coleman*, 680 F.3d 311, 319-20 (3d Cir. 2012) (citing cases). Thus, to the extent the Court considers the claims on the merits, the AEDPA standard of review set forth in § 2254(d) applies to petitioner's defaulted claims.

13

E.    *Sufficiency of the Evidence (Claims I and IV)*

In his first and fourth claims, petitioner contends that the prosecution presented insufficient evidence to sustain his convictions for conducting a criminal enterprise and for conspiracy to deliver cocaine.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial."  *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam).  The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).  Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated

14

a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

2.  *Analysis*

a. *Criminal Enterprise Conviction*

Petitioner first contends that the prosecution presented insufficient evidence to prove his guilt on the criminal enterprise charge. The statute under which petitioner was convicted provides, in

15

relevant part, that "[a] person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity." MICH. COMP. LAWS § 750.159i(1). The statute defines racketeering as, *inter alia*, "committing, attempting to commit, conspiring to commit, or aiding or abetting, soliciting, coercing, or intimidating a person to commit an offense for financial gain, involving . . .[a] felony violation of part 74 of the public health code, 1978 PA 368, MCL 333.7401 to 333.7461, concerning controlled substances." MICH. COMP. LAWS § 750.159g(c). And a "pattern of racketeering activity," in turn, is defined as

> not less than 2 incidents of racketeering to which all of the following characteristics apply:
> (i) The incidents have the same or a substantially similar purpose, result, participant, victim, or method of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated acts.
> (ii) The incidents amount to or pose a threat of continued criminal activity.
> (iii) At least 1 of the incidents occurred within this state on or after the effective date of the amendatory act that added this section, and the last of the incidents occurred within 10 years after the commission of any prior incident, excluding any period of imprisonment served by a person engaging in the racketeering activity.

MICH. COMP. LAWS § 750.159f(c). Petitioner argues that the prosecution failed to present sufficient evidence to show either that the predicate drug trafficking offenses were for the purpose of financial gain, or that he engaged in a pattern of racketeering. The Michigan Court of Appeals rejected each of these arguments.

With respect to the financial gain argument, the court of appeals reasoned that "[o]n June 21, 2006, and June 27, 2006, Fitchett received $480 from the police informant in exchange for the cocaine," and thus the jury could have found beyond a reasonable doubt that petitioner "and Fitchett engaged in the delivery of cocaine to the police informant for financial gain." *Bell*, 2008 WL

16

4604071, at *2.  This determination was reasonable.  It was clear from the evidence presented that petitioner and Fitchett engaged in drug transactions in which they received money in exchange for drugs.  Indeed, the money paid by the police informant was found in petitioner's possession when he was arrested.  The evidence that petitioner received money in exchange for the drugs was sufficient to demonstrate that the sales were committed for financial gain.  *See People v. Lowery*, 274 Mich. App. 684, 692, 736 N.W.2d 586, 592 (2007).

Petitioner also contends that the prosecution failed to present sufficient evidence that he engaged in a pattern of racketeering activity.  Although petitioner does not flesh out this argument in his petition, in the Michigan Court of Appeals petitioner contended that two incidents, alone, are not sufficient to establish a pattern of racketeering activity.  In making this argument, petitioner relied on the Supreme Court's interpretation of the federal RICO statute, 18 U.S.C. § 1961(5), which the Court held requires a showing of continuity.  *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239-41 (1989).  Under this standard, "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Id*. at 241.  Under this standard,

> [a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*Id*. at 242.  The Michigan Court of Appeals rejected petitioner's claim, reasoning that the Supreme Court's interpretation of the federal RICO statute provided no guidance on the meaning of the Michigan racketeering statue.  Explaining that the Michigan "Supreme Court has disapproved of the

use of federal authorities in construing Michigan's racketeering statute when the language of the statute is unambiguous," *Bell*, 2008 WL 4604071, at *3 (citing *People v. Guerra*, 469 Mich. 966, 671 N.W.2d 535 (2003); *People v. Gonzalez*, 469 Mich. 967, 671 N.W.2d 536 (2003)), the court concluded that there was no basis upon which to conclude "that the concepts of closed- and open-ended continuity . . . contained within the definition of 'pattern of racketeering' in the federal RICO statute are included within the plain language of 'pattern or racketeering'" as used in the Michigan statute. *Id.* (citation omitted).

Petitioner's challenge to this element, although cast in terms of the sufficiency of the evidence, is really a challenge to the state court's interpretation of what this element requires. Such a challenge is not cognizable on habeas review. As explained above, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[w]hich acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing *Mullaney*, 421 U.S. at 691 ("This Court ... repeatedly has held that state courts are the ultimate expositors of state law . . . .")). "'What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.'" *Sanford v. Yukins*, 288 F.3d 855, 861 (6th Cir. 2002) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)). As the Second Circuit explained, "*Winship* does not invite federal habeas courts to engage in a substantive analysis of state statutory terms. Our federal constitution does not dictate to the state courts precisely how to interpret their own criminal statutes." *Ponnapula*, 297 F.3d at 182. In *Sanford* the Sixth Circuit explained, in language worthy

18

of complete quotation here:

> "*Jackson* establishes that states must act on the basis of sufficient evidence. The principle seems unproblematic: it is barbaric to imprison persons who no reasonable juror could think had committed a crime. Implementing *Jackson* is not so easy as stating its principle, however. Judgments represent the application of law to fact. Evidence can be 'insufficient' only in relation to a rule of law requiring more or different evidence. When a state court enters or affirms a conviction, it is saying that the evidence satisfies the legal norms. These norms are for the state to select. State law means what state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254. A federal court may not issue the writ on the basis of a perceived error of state law. The difference between unreviewable legal interpretations and factual claims open under *Jackson* establishes a formidable problem of implementation.
> 
> Consider four situations in which a defendant might say that the evidence is insufficient:
> 
> (1) State law defines the combination of elements X, Y, and Z as criminal. (Perhaps X is killing, Y is intent to kill, and Z is lack of justification.) The prosecutor and the state courts concede that X, Y, and Z are elements of the crime and agree with the defendant on their meaning. Defendant contends that there is no basis on which the trier of fact could find Z. The state court disagrees and convicts.
> 
> (2) Defendant believes that the combination of elements X, Y, and Z is an offense. The court disagrees, holding that the state need prove only X and Y. After a trial at which the prosecution introduces no evidence of Z, the court convicts the defendant.
> 
> (3) State law defines the combination of elements X, Y, and Z as criminal. Defendant believes that element Z can be satisfied only if the state establishes fact Z', but the state court disagrees. After a trial at which the prosecution introduces some evidence of Z but does not establish Z', the court convicts the defendant.
> 
> (4) State case law defines the combination of elements X, Y, and Z as criminal. The supreme court of the state concludes that this is an incorrect interpretation of the statute and that the prosecution need establish only X and Y. Circumstance Z, the court concludes, is an affirmative defense. After a trial at which the prosecution establishes only X and Y, the court convicts the defendant."

*Sanford*, 288 F.3d at 860-61 (quoting *Bates*, 934 F.2d at 102 (internal citations and quotations omitted)). Case (1) represents the typical *Jackson* claim, which is cognizable on habeas review. Case (2), however, presents a pure question of state law that is beyond the reach of a federal habeas court, while Case (3) likewise is merely a variant of Case (2). *See id.* at 861 (citing *Bates*, 934 F.2d at 102). Here, petitioner's argument falls within Case (3). Petitioner argues that the "pattern of

racketeering activity" (element Z, in the Sixth Circuit's terminology), requires a showing of continuity (fact Z', in the Sixth Circuit's terminology).  His claim is therefore a noncognizable challenge to the Michigan Court of Appeals's interpretation of state law.  Because petitioner presents no other argument as to why the evidence was insufficient to show that he engaged in a pattern of racketeering activity as defined by state law, he is not entitled to habeas relief on this claim.

### b.  Conspiracy Convictions

Petitioner also contends that the prosecution presented insufficient evidence to prove his guilt beyond a reasonable doubt on the conspiracy convictions.  Michigan law provides that "a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form."  MICH. COMP. LAWS § 333.7401(1).  Michigan law also provides, in relevant part:

> Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein:
> (a) Except as provided in paragraphs (b), (c) and (d) if commission of the offense prohibited by law is punishable by imprisonment for 1 year or more, the person convicted under this section shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,000.00 may be imposed.

MICH. COMP. LAWS § 750.157a.  Under Michigan law,

> [t]o be convicted of conspiracy . . . to deliver a controlled substance, the people must prove that (1) the defendant possessed the specific intent to deliver the statutory minimum as charged, (2) his coconspirators possessed the specific intent to deliver the statutory minimum as charged, and (3) the defendant and his coconspirators possessed the specific intent to combine to deliver the statutory minimum as charged to a third person.

*People v. Justice*, 454 Mich. 334, 349, 562 N.W.2d 652, 659 (1997).  "The establishment of a mere

20

buyer-seller relationship will not evidence a conspiracy to possess with intent to deliver a controlled substance because the consummation of the crime of conspiracy necessarily involves the cooperation of two persons." *Id*. at 339 n. 26, 562 N.W.2d at 659 n.26. The participants must have the specific intent to "combine" to accomplish the goals of the conspiracy. *See id*. at 345-46, 562 N.W.2d at 657-58. In this context, "[t]he term 'combine' means that all the participants formed an agreement, express or implied, to accomplish the objective of the conspiracy. That is, all parties shared knowledge that the narcotics are ultimately to be delivered to a third party for consumption and all agreed to meet this objective of delivery by fulfilling their agreements." *Id*. at 345 n.19, 562 N.W.2d at 658 n.19. Nevertheless, because "[i]dentifying the objectives and even the participants of an unlawful agreement is often difficult because of the clandestine nature of criminal conspiracies[,] . . . direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties." *Id*. at 347, 562 N.W.2d at 658-89; *see also*, *People v. Hunter*, 466 Mich. 1, 7, 643 N.W.2d 218, 221 (2002).

Petitioner argues that there was insufficient evidence of an agreement, or of anything more than a buyer-seller relationship. The Michigan Court of Appeals rejected these arguments. As to the first, the court explained that evidence presented at trial showed that: (1) petitioner arranged for Fitchett to stay at Gonzales's house; (2) Fitchett received the cocaine that he gave to Gonzales from petitioner; (3) the police informant had to wait for petitioner to arrive at the home to complete the sale, because Fitchett did not have any drugs, and when petitioner arrived he and Fitchett met in private, after which Fitchett delivered the cocaine to the informant; (4) a similar pattern was repeated at the second controlled buy; and (5) petitioner had possess on the money used in the controlled buy upon his arrest. *See Bell*, 2008 WL 4604071, at *1. From this evidence, the court concluded, "a

21

rational trier of fact could have found beyond a reasonable doubt that defendant and Fitchett conspired to deliver cocaine on these two occasions." *Id*. at *2. As to petitioner's second argument, the court of appeals reasoned that "given the participation of the police informant, [petitioner] and Fitchett were not the only parties involved in the drug transactions," and thus more than a mere buyer-seller relationship was established. *Id*. These determinations were reasonable. The evidence showed that each time Fitchett wanted to deliver cocaine, either to Gonzales or the informant, he contacted petitioner, who arrived and delivered the cocaine to Fitchett. The evidence also established that petitioner received at least a portion of the money from these sales. The evidence showing that Fitchett and petitioner worked together to complete the delivery of cocaine provided sufficient evidence from which the jury could conclude beyond a reasonable doubt that petitioner and Fitchett conspired to deliver cocaine. Further, because the evidence showed that petitioner and Fitchett conspired together to deliver the cocaine to a third person–*i.e.*, the police informant–the evidence was sufficient to establish more than a mere buyer-seller relationship.

F.     *Included Offenses (Claim II)*

Petitioner next contends that his delivery and conspiracy convictions must be vacated because these offense are necessarily included lesser offenses of the criminal enterprise conviction. This claim is not cognizable on habeas review. Under Michigan law, "'the predicate offenses of racketeering are not necessarily lesser included offenses of that offense.'" *Bell*, 2008 WL 4604071, at *3 (quoting *People v. Martin*, 271 Mich. App. 280, 296, 721 N.W.2d 815, 830 (2006), *aff'd on other grounds*, 482 Mich. 851, 752 N.W.2d 457 (2008)). The court of appeals's conclusion that the predicate acts are "not . . . lesser included offense[s]" of conducting a criminal enterprise under Michigan law "is entitled to deference and must be accepted by this Court." *Mariano v. Ryan*, No.

22

CV 05-2784, 2010 WL 2851308, at *7 (May 18, 2010) (citing *Bradshaw v. Richey*, 564 U.S. 74, 76 (2005) (per curiam) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus")), *magistrate judge's report adopted*, 2010 WL 2851294 (C.D. Cal. July 19, 2010).

To the extent petitioner is attempting to raise a double jeopardy claim based on his multiple convictions, the claim is without merit.[4]  The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)). However, in the context of multiple punishments, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  Thus, "even if the two statutes proscribe the same conduct, the Double

---

[4]Petitioner did not explicitly raise such a claim, either here or in the state courts.

23

Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986). As the Supreme Court explained, when "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983). In determining whether the Michigan legislature intended to authorize separate, cumulative punishments in the circumstances present here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments[.]" *Brimmage*, 793 F.2d at 1015; *see also*, *Hunter*, 459 U.S. at 368.

Here, the Michigan courts have determined that the Michigan legislature intended to authorize multiple punishments for both engaging in a criminal enterprise and the underlying predicate offenses. In *Martin*, *supra*, the Michigan Court of Appeals noted that the criminal enterprise statute explicitly provides that "[c]riminal penalties under this section are not mutually exclusive and do not preclude the application of any other criminal or civil remedy under this section or any other provision of law." MICH. COMP. LAWS § 750.159j(13). Based on this language, the *Martin* court concluded that the Michigan " Legislature intended racketeering to be a separate and distinct offense, the violation of which may be punished separately from and cumulatively with the underlying predicate offenses." *Martin*, 271 Mich. App. at 295, 721 N.W.2d at 829. Because this Court is bound by the Michigan courts' interpretation of state law in deciding the double jeopardy issue, *see Rodgers*, 49 Fed. Appx. at 597; *Banner*, 886 F.2d at 780, the "court's inquiry is at an end" and there is no double jeopardy violation. *Johnson*, 467 U.S. at 499 n.8. Accordingly, the Court

24

should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Evidentiary Claims (Claims III & XI)*

Petitioner next raises two claims challenging the trial court's evidentiary rulings.  In Claim III, petitioner contends that he was denied his right to confront the witnesses against him by the introduction of Richard Hager's (the police informant) testimony that Fitchett told him that he was waiting for petitioner to arrive to deliver the cocaine.  In Claim XI, he contends that he was denied his right to present a defense by the exclusion of the transcript of his codefendant's plea, and the absence of a *res gestae* witness.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Evidentiary Errors Generally*

To the extent petitioner asserts that the trial court's evidentiary rulings incorrectly applied the Michigan Rules of Evidence, he is not entitled to habeas relief.  It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws).  Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial,

25

unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983). Thus, petitioner's claims that the trial court improperly applied the Michigan Rules of Evidence, standing alone, provide no basis for habeas relief.

> 2. *Hearsay/Confrontation (Claim III)*

> *a. Clearly Established Law*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is applicable to the states through the Fourteenth Amendment's Due Process Clause. *See Pointer v. Texas*, 480 U.S. 400, 406 (1965). In *Ohio v. Roberts*, 448 U.S. 56 (1980), the Court explained that the underlying purpose of the Confrontation Clause is similar to that of the hearsay rule, *i.e.*, to exclude unreliable, out-of-court statements in criminal proceedings.

26

Thus, the Court reasoned:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66. As the Court explained in *Roberts*, reliability is inferred if the evidence was admitted pursuant to a firmly rooted hearsay exception. The theory behind this presumption is that these firmly rooted exceptions represent judgments, based on history and practice, that statements made in certain circumstances are inherently trustworthy such that the "adversarial testing [embodied in the Confrontation Clause] would add little to [their] reliability." *Idaho v. Wright*, 497 U.S. 805, 821 (1990). Thus, a hearsay exception is "firmly rooted" if it "rest[s] upon such solid foundations that admission of virtually any evidence within [the exception] comports with the substance of constitutional protection." *Roberts*, 448 U.S. at 66 (internal quotation omitted).

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court abrogated *Roberts* as applied to testimonial hearsay statements. After surveying the historical development of the Confrontation Clause and the jurisprudence interpreting it, the Supreme Court concluded that, under a proper understanding of the Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. The Court then explained that *Roberts*'s allowance of testimonial statements based on their reliability, where there has been no opportunity for cross-examination of the declarant, departed from this proper understanding of the Confrontation Clause. *See id.* at 60-68. The Court therefore abrogated *Roberts* as applied to testimonial hearsay statements, concluding that "[w]here testimonial statements are at issue, the only indicium of

27

reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69. In *Crawford*, the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Crawford*, 541 U.S. at 68. The Court did, however, provide some guidance. Specifically, the Court provided three possible "formulations of th[e] core class of 'testimonial' statements":

> [1] *ex parte* in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [2] extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (internal quotations and citations omitted). While the Court declined to adopt any of these three formulations, the Court noted that the term "testimonial," whatever else it may cover, "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

*Crawford* establishes a confrontation rule with respect to "testimonial" statements; it has no application to non-testimonial hearsay. In *Crawford*, the Court suggested, but did not definitively rule, that the Confrontation Clause is limited to regulating the introduction of testimonial hearsay, and has no application at all to the admission at trial of non-testimonial hearsay. The Court explained that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law–as does *Roberts*, and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68. The Supreme Court has since clarified that the Confrontation Clause is simply not implicated by the introduction of non-testimonial hearsay. In

28

*Davis v. Washington*, 547 U.S. 813 (2006), the Court explicitly addressed this question of "whether the Confrontation Clause applies only to testimonial hearsay," *id.* at 823, and in doing so abrogated *Roberts* in whole. The Court noted that the answer to this question was suggested in *Crawford*, when the *Crawford* decision explained that the Confrontation Clause focuses on "witnesses" who give "testimony." *Id.* at 823-24 (discussing *Crawford*, 541 U.S. at 51). The *Davis* Court explained that "[a] limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its 'core,' but its perimeter." *Id.* at 824 Thus, where nontestimonial hearsay is at issue, the Confrontation Clause is not implicated at all, and need not be considered. *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007) ("Under *Roberts*, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability. Under *Crawford*, on the other hand, the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability."); *United States v. Pugh*, 273 Fed. Appx. 449, 454 (6th Cir. 2008); *United States v. Feliz*, 467 F.3d 227, 231 (2d Cir. 2006).

### b. Analysis

Petitioner contends that he was denied his right to confront the witnesses by the introduction of the informant's testimony that Fitchett told the informant that he was waiting for petitioner to arrive to deliver the cocaine. The Michigan Court of Appeals rejected this claim, reasoning that "Fitchett's statement was made in the course and in furtherance of the conspiracy and, therefore, by its nature, the statement was nontestimonial." *Bell*, 2008 WL 4604071, at *4. This determination was reasonable. The courts, including the Sixth Circuit, have uniformly held that such co-conspirator statements do not constitute testimonial hearsay under *Crawford*. *See United States v.*

29

*Stover*, 474 F.3d 904, 912-13 (6th Cir. 2007); *see also*, *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005); *United States v. Sanchez-Berrios*, 424 F.3d 65, 75 (1st Cir. 2005); *United States v. Jenkins*, 419 F.3d 614, 618 (7th Cir. 2005); *United States v. Logan*, 419 F.3d 172, 178 (2d Cir. 2004); *United States v. Robinson*, 367 F.3d 278, 292 n.20 (5th Cir. 2004); *United States v. Reyes*, 362 F.3d 536, 541 n.4 (8th Cir. 2004). Petitioner contends that the statements were not properly admitted as statements of a coconspirator under MICH. R. EVID. 801(d)(2)(E) because there was no proof of a conspiracy, but as explained above there was abundant evidence that petitioner and Fitchett conspired together to deliver cocaine. Moreover, even if the statements did not meet the coconspirator exception under Rule 801(d)(2)(E), they were still not testimonial, as they were statements made by Fitchett to a potential purchaser of his drugs, and not the type of formalized testimonial statement identified in *Crawford*. Thus, the Michigan Court of Appeals's resolution of this claim was reasonable. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.   *Exclusion of Evidence (Claim XI)*

Petitioner next contends that he was denied his right to present a defense by the exclusion of Fitchett's plea transcript, and by allowing Fitchett to assert his Fifth Amendment privilege. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

a. *Clearly Established Law*

Although the Constitution does not explicitly provide a criminal defendant with the right to "present a defense," the Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law. Implicit in these provisions is the right to present a

meaningful defense.  As the Supreme Court has recognized, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967).  "The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact.  The right to offer testimony is thus grounded in the Sixth Amendment." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988).  Further, the Court has noted that "[t]his right is a fundamental element of due process of law," *Washington*, 388 U.S. at 19, and that "[f]ew rights are more fundamental[.]" *Taylor*, 484 U.S. at 408.  Although the right to present a defense is fundamental, it is not absolute.  Thus, the right must yield to other constitutional rights, *see e.g.*, *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."), or to other legitimate demands of the criminal justice system, *see United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Further, to constitute a denial of the right to present a defense, a trial court's exclusion of evidence must "infringe[] upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308.  A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315).  Thus, "'[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th

31

Cir. 2006) (quoting *Washington v. Schriver*, 255 F.3d 45, 47 (2d Cir. 2001)) (alterations by quoting court).

### b. Analysis

Petitioner contends that he was denied his right to present a defense when the trial court permitted Fitchett to assert a blanket invocation of his right to remain silent and refuse to testify. The trial court rejected this claim, concluding that "[t]he record is clear, Fitchett intended to invoke his Fifth Amendment rights if he was called as a witness." Trial Ct. op., at 3. This determination was reasonable.  It is well established that "[a] defendant's right of confrontation and compulsory process under the Sixth Amendment is not violated when a witness invokes her right against self incrimination under the Fifth Amendment." *United States v. Dago*, 813 F. Supp. 736, 746 (D. Colo. 1992), *aff'd*, 33 F.3d 63 (10th Cir. 1994) (Table).  "The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege." *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978).  Thus, "the courts have generally agreed that 'the Sixth Amendment's right of compulsory process must give way to the subpoenaed witness' personal Fifth Amendment right against self-incrimination.'" *Royal v. Maryland*, 529 F.2d 1280, 1283 (4th Cir. 1976) (dissenting op.) (quoting *Johnson v. Johnson*, 375 F. Supp. 872, 875 (W.D. Mich. 1974); *see also, United States v. Hernandez*, 962 F.2d 1152, 1161 (5th Cir. 1992); *United States v. Paris*, 827 F.2d 395, 399 (9th Cir. 1987); *United States v. George*, 778 F.2d 556, 563 (10th Cir. 1985); *United States v. Alexander*, 735 F. Supp. 923, 927 (D. Minn. 1990).  The trial judge is afforded broad discretion in determining the merits of a claim of privilege, *see Hernanadez*, 962 F.2d at 1161, and a reviewing court, even on direct review, must accord substantial deference to the trial court's determination.  *See United*

32

*States v. Gibbs*, 182 F.3d 408, 431 (6th Cir. 1999); *United States v. Gaitan-Acevedo*, 148 F.3d 577, 588 (6th Cir. 1998).

As petitioner correctly notes, a witness's fear of prosecution must be real and reasonable; it cannot be merely fanciful or speculative. *See Ohio v. Reiner*, 532 U.S. 17, 21 (2001); *Gaitan-Acevedo*, 148 F.3d at 588. Nevertheless, the privilege against self-incrimination must "be accorded liberal construction in favor of the right it was intended to secure." *Hoffman*, 341 U.S. at 486. Thus, it is only when the danger of incrimination is no more than fanciful that a court should overrule a witness's claim of privilege. *See Resnover v. Pearson*, 965 F.2d 1453, 1462 (7th Cir. 1992). Here, there is no question that Fitchett was involved in the offenses and thus had a real and reasonable fear of incriminating himself if he testified at petitioner's trial. Petitioner contends that Fitchett had no reasonable fear of incriminating himself because he had already entered his guilty plea at the time of petitioner's trial. This argument is without merit. The Supreme Court has held that a defendant may invoke the privilege after a guilty plea but prior to sentencing because the act of incrimination is "not complete" until the conviction and sentence is final. *See Mitchell v. United States*, 526 U.S. 314, 325-27 (1999); *see also*, *United States v. Boothe*, 335 F.3d 522, 526 (6th Cir. 2003) ("[A] guilty plea is not a blanket waiver of the privilege against self-incrimination and it survives through sentencing."). Here, petitioner does not assert, and the record does not show, that Fitchett had already been sentenced at the time of petitioner's trial.

Petitioner also contends that the trial court erred in accepting Fitchett's blanket invocation of his Fifth Amendment privilege. This argument is likewise without merit. A trial court's acceptance of a blanket invocation of privilege does not require relief where it is clear that a particularized inquiry would be futile. *See Gibbs*, 182 F.3d at 431. Thus, a trial court may sustain

33

a blanket claim of privilege where the court, based on its familiarity with the evidence in the case, concludes that the witness could properly invoke the privilege to answer all legitimate, relevant questions put to him. *See United States v. Klinger*, 128 F.3d 705, 709-10 (9th Cir. 1997); *United States v. Ortiz*, 82 F.3d 1066, 1073 (D.C. Cir. 1996). Here, given his integral role in the crimes charge, Fitchett could legitimately fear incrimination from answering any questions put to him. Even his admission that he was present during the drug sales, although undisputed and not sufficient in itself to convict him of any crime, would be one link in the chain of evidence establishing his guilt. Thus, petitioner cannot show that the trial court's acceptance of Fitchett's blanket assertion of the privilege was unreasonable. *See Klinger*, 128 F.3d at 710.

Petitioner also contends that he was denied the right to present a defense by the trial court's exclusion of the transcript of Fitchett's plea hearing. The trial court denied petitioner's request to admit this evidence, concluding that it was not admissible under MICH. R. EVID. 804(b)(3) because there were no corroborating circumstances indicating the trusthworthiness of the statement. *See* Trial Tr., Vol. III, at 149-50; Vol. IV, at 13-17.[5] Specifically, the court noted that Fitchett's statements were not spontaneous but were in response to questions from the court, were not contemporaneous to the events described in the plea proceedings, were not corroborated by other evidence, and demonstrated an attempt to shift blame to Gonzalez, against whom Fitchett had a motive to retaliate because Gonzalez had agreed to testify against Fitchett. *See id.* at 13-17. There is no doubt that petitioner's right to present a defense does not relieve him from his obligation to

---

[5] Rule 804(b)(3) provides that a statement is not barred by the hearsay rule if the declarant is unavailable at trial and the statement is against the declarant's penal interest, except that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." MICH. R. EVID. 804(b)(3).

34

comply with the rules of evidence, *see Clark v. Arizona*, 548 U.S. 745, 770 (2006); *Scheffer*, 523 U.S. at 308. It is true that the Court has held that state evidence rules may not be applied mechanistically so as to prevent a defendant from presenting evidence fundamental to his defense. *See Chambers*, 410 U.S. at 302, 313. However, *Chambers* and its progeny "do not stand for the proposition that a petitioner's due process rights are violated any time a state court excludes evidence that the petitioner believes is the centerpiece of his defense. Instead, the cases . . . stand for the more limited proposition that a defendant's due process rights are violated when a state court excludes important evidence on the basis of an arbitrary, mechanistic, or per se rule, or one that is disproportionate to the purposes it is designed to serve." *Alley v. Bell*, 307 F.3d 380, 394 (6th Cir. 2002). Importantly, "[o]nly rarely" has the Supreme Court "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (per curiam). Here, the trial court did not apply Rule 804(b)(3) arbitrarily or mechanistically. Rather, the court gave full consideration to the factors surrounding Fitchett's plea statements, and gave detailed reasons for finding that those statements were not admissible under Rule 804(b)(3). In these circumstances, the application of Rule 804(b)(3) to exclude this evidence did not deprive petitioner of his right to present a defense. *See Phillips v. Herndon*, 730 F.3d 773, 778 (9th Cir. 2013); *United States v. Johnson*, 121 Fed. Appx. 912, 915 (2d Cir. 2005); *Allen v. Hawley*, 74 Fed. Appx. 457, 462 (6th Cir. 2003). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Jury Instructions (Claim V)*

In his fifth claim, petitioner contends that he was denied a fair trial by the trial court's erroneous instructions on the elements of the offenses. The Court should conclude that petitioner

35

is not entitled to habeas relief on these claims.

    1.    *Clearly Established Law*

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

    2.    *Analysis*

Petitioner contends that the trial court failed to properly instruct the jury on the elements of conducting a criminal enterprise. Specifically, he contends that the trial court failed to instruct the jury that the predicate acts had to be committed for financial gain, and that the trial court failed to instruct on the continuity requirement for establishing a pattern of racketeering activity. The Michigan Court of Appeals rejected this claim, concluding that the trial court properly instructed

36

the jury on the elements of the offense.  *See Bell*, 2008 WL 4604071, at *5.  This determination was reasonable.  The trial court explicitly instructed the jury that, as one of the elements of the criminal enterprise offense, the prosecution had to prove that petitioner "engaged in a pattern of racketeering activity."  Trial Tr., Vol. IV, at 42.  The court further explained that "[r]acketeering means committing . . . the offense of delivery of cocaine for financial gain."  *Id*.  Thus, the trial court's instructions informed the jury that petitioner's predicate acts had to be committed for the purpose of financial gain.  As to the continuity requirement, as explained above the Michigan criminal enterprise statute does not mirror the federal RICO statute, and does not contain a continuity requirement.  The trial court's instructions accurately explained the concept of "pattern of racketeering activity" in accordance with the elements of the criminal enterprise offense under state law.  *Compare* MICH. COMP. LAWS § 750.159f(c), *with* Trial Tr., Vol. IV, at 42-43.  Accordingly, petitioner is not entitled to habeas relief on this claim.

Petitioner also contends that the trial court inadequately instructed the jury on the elements of the conspiracy offense, because it did not explicitly inform the jury that it had to find that he conspired with Fitchett in particular.  The court of appeals rejected this claim, noting that the court's preliminary instructions informed the jury that petitioner was charged with conspiring with Fitchett, and that viewed in their entirety "the court's conspiracy instructions were accurate and complete." *Bell*, 2008 WL 4604071, at *5.  This determination was reasonable.  The trial court gave an extensive instruction on the elements of conspiracy.  *See* Trial Tr., Vol. IV, at 39-41.  As part of this instruction, the court informed the jury that the prosecutor was required to prove beyond a reasonable doubt that petitioner "and someone else knowingly agreed to deliver cocaine," *id*. at 39, and explained the factors the jury could consider in deciding whether an agreement was formed, *see*

37

*id*. at 40.  It is true, as petitioner notes, that the court did not explicitly instruct the jury that it had to find that petitioner agreed with Fitchett to deliver cocaine, but there was absolutely no evidence that any other person was involved in the alleged conspiracy.  Based on the trial court's initial instructions, the evidence at trial, and the prosecutor's closing argument, the only person whom the jury could have found to be a coconspirator was Fitchett.  In these circumstances, the trial court's instructions adequately informed the jury of the elements of the offense.  *See People v. Causey*, No. 180059, 1998 WL 1997530, at *3 (Mich. Ct. App. Jan. 16, 1998) (per curiam).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.     *Sentencing (Claim VII)*

Petitioner next contends that he was sentenced on the basis of inaccurate information.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

In *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972), "the United States Supreme Court invalidated defendants' sentences because they were imposed by trial courts in reliance upon material false assumptions of fact."  *Eutzy v. Dugger*, 746 F. Supp. 1492, 1504 (N.D. Fla. 1989) (discussing *Townsend* and *Tucker*); *accord Stewart v. Peters*, 878 F. Supp. 1139, 1144 (N.D. Ill. 1995) (same).  *See generally*, *Tucker*, 404 U.S. at 448-49; *Townsend*, 334 U.S. at 740-41.  It is well established, however, that a *Tucker* violation arises only where the improper information  "actually served as the basis for the sentence."  *United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002) (internal quotation omitted); *see also*, *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003); *United States v. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985).  "A sentencing court demonstrates reliance on misinformation when the court gives 'explicit

38

attention' to it, 'found[s]' its sentence 'at least in part' on it, or gives 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447). Thus, to be entitled to habeas relief on this claim petitioner "must show that the sentencing court actually relied on this information and that it was materially false." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1074 (E.D. Mich. 2000) (Gadola, J.).

      2.    *Analysis*

At sentencing, after ruling on petitioner's various objections to the presentence report, the trial court computed a guideline range of 78-260 months for the minimum sentence on the criminal enterprise conviction. *See* Sentencing Tr., at 22. The prosecutor argued that the court should impose the maximum guideline sentence on the minimum term of imprisonment (260 months), in part because petitioner "was part of what the People consider to be a major source of crack cocaine in the Bay City area," *id*. at 39, and in part based on his extensive criminal history. After defense counsel addressed the court and petitioner indicated that he had nothing to add, the trial court imposed a minimum term of 260 months' imprisonment on the criminal enterprise conviction, "agree[ing] with [the prosecutor that the sentences] ought to be at the maximum of the guidelines." *Id*. at 42. Petitioner contends that the prosecutor's characterization of him as a major drug dealer was false, and that the trial court relied on this false fact in imposing sentence. The Michigan Court of Appeals rejected this claim, reasoning:

> "[A] review of the record establishes that when the trial court stated it agreed with the prosecutor, the trial court was referring to the prosecutor's recommendation that defendant receive minimum sentences near the high end of the sentence range. There is no indication in the record that the trial court, in deciding to sentence defendant to the maximum minimum sentences, relied on the prosecutor's unsupported statements, rather than on the evidence presented at trial and the information contained in the presentence report."

*Bell*, 2008 WL 4604071, at *5.  This determination was reasonable.

Here, as the court of appeals explained, there is no indication that the trial court accepted the prosecutor's characterization of petitioner as being part of a major drug operation.  The trial court "agreed [that the sentences] ought to be at the maximum," but did not indicate what that agreement was based on or state that it agreed that petitioner was part of a major drug operation.  Nothing in the sentencing transcript establishes that the trial court gave "'explicit attention' to [the prosecutor's allegedly inaccurate statement], 'found' its sentence 'at least in part' on it, or g[ave] 'specific consideration' to the information before imposing sentence." *Lechner*, 341 F.3d at 639 (quoting *Tucker*, 404 U.S. at 444, 447).  Because petitioner cannot "show that the sentencing court actually relied on this information and that it was materially false," *Hanks*, 123 F. Supp. 2d at 1074, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Newly Discovered Evidence/Actual Innocence (Claim VIII)*

In his eighth claim, petitioner contends that he is entitled to habeas relief because he has newly discovered evidence of his innocence.  In support of this claim, petitioner presents Fitchett's affidavit.  In this affidavit, dated March 3, 2010, Fitchett avers that he "never planned, agreed to, or conspired with [petitioner] to sell . . . drugs to Mr. Hager," that petitioner "was only an acquaintance . . . who occasionally purchased small quantities of crack cocaine from" Fitchett, and that on the two occasions of the controlled buys when petitioner came to Gonzalez's house, "Mr. Hager just happened to also be there to purchase crack cocaine . . . [b]ut that was purely by circumstance, Mr. Bell and Mr. Hager never talked to or interacted with each other at all, and I never talked to them about why the other was at the house either."  Aff. of Rodlopho Fitchett, Jr.  The trial court rejected petitioner's claim, concluding that Fitchett's affidavit was not credible evidence

40

because, as submitted to the trial court, it was not notarized or made under oath, and that in any event post-trial statements from a codefendant do not constitute newly discovered evidence warranting a new trial. *See* Trial Ct. op., at 2. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief. *See Cress v. Palmer*, 484

F.3d 844, 854 (6th Cir. 2007); *Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).[6]

Further, even if such a claim were cognizable, petitioner's evidence falls far short of that necessary to establish that he is innocent. In *Herrera*, without elaborating further, the Court noted that even if a free-standing claim of innocence were cognizable on habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417. In *Schlup*, the Court elaborated on the showing required to establish "actual innocence" for purposes of overcoming a procedural bar to consideration of a constitutional claim. The Court explained that, to establish actual innocence, the petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted). The Supreme Court has also explained that a petitioner cannot establish his actual innocence merely be rehashing his innocence claims raised in the state courts and relying on

---

[6]In *Herrera* and again in *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court noted that it might be the case that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief," but explicitly declined to determine whether this is, in fact, the constitutional rule. *Herrera*, 506 U.S. at 417; *see also*, *House*, 547 U.S. at 555. This rule affords no basis for relief to petitioner, however. First, as *Herrera* makes clear this rule is limited to the context of executing an innocent person, and has no applicability in a non-capital case. *See Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *Wright*, 247 Fed. Appx. at 711. Second, because the Supreme Court has recognized that the question whether there exists a "federal constitutional right to be released upon proof of 'actual innocence' . . . is an open question," *District Attorney's Office for the 3d Jud. Dist. v. Osborne*, 129 S. Ct. 2308, 2321 (2009), a state court's failure to grant relief on the basis of actual innocence cannot be contrary to or an unreasonable application of any clearly established federal law under § 2254(d)(1). *See Reyes v. Marshall*, No. CV 10-3931, 2010 WL 6529336, at *3 (Aug. 23, 2010), *magistrate judge's report adopted*, 2011 WL 1496376 (C.D. Cal. Apr. 14, 2011). *See generally*, *Murdoch v. Castro*, 609 F.3d 983, 994 (9th Cir. 2010) (state court's failure to grant relief on basis which Supreme Court has recognized is an open question cannot be unreasonable application of clearly established law); *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002) (same).

the evidence adduced at trial.  If he could, federal habeas review would become nothing more than a second trial on the merits, something the Supreme Court has repeatedly admonished the federal courts to avoid.  *See Milton v. Wainwright*, 407 U.S. 371, 377 (1972) ("The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases *de novo*[.]").  Thus, "to be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial."  *Schlup*, 513 U.S. at 324. "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence."  *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Here, petitioner's innocence claim is not based on the type of new, reliable evidence identified in *Schlup*.  New statements from witnesses years after the crime are inherently suspect, *see Schlup*, 513 U.S. at 331, and such statements are to be viewed with "a degree of skepticism." *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring); *see also*, *McCray v. Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007) (citing *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001); *Byrd v. Collins,* 209 F.3d 486, 508 n. 16 (6th Cir. 2000).  There is nothing to explain why Fitchett remained silent in the three years between petitioner's conviction and the signing of his affidavit.  *See Lewis v. Smith,* 110 Fed. Appx. 351, 355 (6th Cir. 2004) (proper for district court to reject as suspicious a witness' recanting affidavit made two years after petitioner's trial); *Olson v. United States*, 989 F.2d 229, 231 (7th Cir. 1993) (recantation more than four years after trial testimony was dubious). Moreover, Fitchett's affidavit is suspect because he has already been convicted for his role in the crime pursuant to his plea agreement.  *See Allen v. Yukins*, 366 F.3d 396, 405 (6th Cir. 2004)

("[P]ostconviction statements by codefendants are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences."); *In re Byrd*, 269 F.3d 585, 606 (6th Cir. 2001) (collecting cases) (timing was suspect where codefendant's affidavit was submitted only after he was convicted). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

K.    *Ineffective Assistance of Counsel (Claims VI, IX, X, and XII)*

Petitioner next raises several claims that his trial and appellate attorneys rendered constitutionally ineffective assistance. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must

44

overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
> Establishing that a state court's application of *Strickland* was unreasonable

under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

With respect to appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id.* As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See id.* at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

2.    *Trial Counsel (Claims VI, IX, and X)*[7]

---

[7]Petitioner's claim that trial counsel was ineffective for failing to object to the jury instructions was raised on direct appeal and addressed on the merits by the Michigan Court of Appeals. That ruling is therefore subject to the deferential standard of review set forth in § 2254(d). Likewise, the trial court considered and rejected petitioner's appellate counsel claim on the merits in denying his motion for relief from judgment, *see* Trial Ct. op, at 3, and thus this claim is subject to § 2254(d). Petitioner's remaining ineffective assistance claims, however, were not adjudicated on the merits by the state courts. These claims were first raised in petitioner's motion for relief from judgment. The trial court, implicitly

46

*a. Preliminary Examination*

Petitioner first contends that trial counsel was ineffective for failing to investigate evidence that would have negated a finding of probable cause at the preliminary examination. Specifically, petitioner contends that prior to the preliminary examination he provided counsel with an affidavit from Fitchett which would have negated a finding that he was involved in the drug sales forming the basis of the charges. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

To establish prejudice on this claim, petitioner must show a reasonable probability that, but for counsel's alleged error, the charges against him would have been dismissed at the preliminary examination. *See Dell v. Straub*, 194 F. Supp. 2d 629, 649 (E.D. Mich. 2002) (Friedman, J.). Petitioner cannot make this showing. Under Michigan law, a charge will be bound over for trial to the circuit court if there is probable cause to believe a crime has been committed and the defendant committed the crime. *See* MICH. COMP. LAWS § 766.5. In making the probable cause determination, the district judge does not weigh the credibility of the witnesses. The judge may rely on circumstantial evidence and draw reasonable inferences from the evidence, and the probable cause determination is entitled to great deference. *See People v. Crippen*, 242 Mich. App. 278, 281-82, 617 N.W.2d 760, 763 (2000); *People v. Woods*, 200 Mich. App. 283, 287-88, 504 N.W.2d 24, 27 (1993). The prosecution's burden at the preliminary examination stage is not onerous. As the Michigan Court of Appeals has explained:

invoking the *res judicata* rule of MICH. CT. R. 6.508(D)(2), concluded that "[a]dequacy of trial counsel was addressed by the Court of Appeals," and thus that it was "not permitted to re-examine this issue." Trial Ct. op., at 2. These specific ineffective assistance claims, however, were not raised on direct appeal nor were they considered on the merits by the Michigan Court of Appeals. Because these ineffective assistance claims were adjudicated on the merits, they are not subject to § 2254(d), and I therefore apply the *Strickland* standard to these claims *de novo*.

> A district court must bind over where the prosecutor has presented competent evidence sufficient to support probable cause to find both that a felony was committed and that defendant committed it. [*People v. Northey*, 231 Mich.App. 568], 574-575, 591 N.W.2d 227 [(1998)]. The prosecutor is not required to prove all elements of the offense charged at the preliminary hearing, but must only produce evidence sufficient for a finding of probable cause. "Probable cause to believe that the defendant committed the crime is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong to warrant a cautious person in the belief that the accused is guilty of the offense charged." *People v. Woods*, 200 Mich. App. 283, 288, 504 N.W.2d 24 (1993). "Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to justify binding over a defendant." *Id*.

*People v. Cervi*, 270 Mich. App. 603, 616, 717 N.W.2d 356, 364 (Mich. Ct. App. 2006); *see also*,

*People v. Grayer*, 235 Mich. App. 737, 744 n.3, 599 N.W.2d 527, 531 n.3 (Mich. Ct. App. 1999).

"Probable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to

conscientiously entertain a reasonable belief of the accused's guilt." *People v. Justice*, 454 Mich.

334, 344, 562 N.W.2d 652, 657 (1997).

Here, petitioner does not detail what information was contained in the affidavit he provided

to counsel. Even assuming that the affidavit contained the same information as in Fitchett's current

affidavit, petitioner has provided no reason to believe that Fitchett would have been any more

willing to waive his Fifth Amendment privilege at the preliminary examination than he was at trial.

And even if Fitchett had testified at the preliminary examination consistent with his current affidavit,

this testimony would have provided no basis for dismissing the charges. Hager's testimony at the

preliminary examination, which was consistent with his trial testimony, established probable cause

for the charges, and petitioner does not contend otherwise. Rather, he argues that Fitchett's

testimony would have contradicted Hager's testimony and shown that he was merely present at the

house when Fitchett made the sales to Hager. This testimony, however, would not have negated a

finding of probable cause. Under Michigan law, "[i]f the evidence conflicts or raises a reasonable

48

doubt concerning the defendant's guilt, the defendant should nevertheless be bound over for trial, at which the trier of fact can resolve the question." *People v. Ridden*, 290 Mich. App. 65, 84, 799 N.W.2d 184, 195 (2010) (citing *People v. Yost*, 468 Mich. 122, 128, 659 N.W.2d 604, 607-08 (2003)).  "[T]he prosecution has no duty at the preliminary examination to negate [the defense] theory to get defendant bound over for trial." *Yost*, 468 Mich. at 132, 659 N.W.2d at 610.  Because Fitchett's purported testimony would not have negated probable cause, petitioner cannot show that he was prejudiced by counsel's failure to investigate whether Fitchett would testify at the preliminary examination.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b.  Failure to Object to Jury Instructions

Petitioner next contends that counsel was ineffective for failing to object to the erroneous jury instructions on the elements of the criminal enterprise and conspiracy charges.  As explained above, the Michigan Court of Appeals determined that the trial court's jury instructions were appropriate as a matter of state law.  In analyzing petitioner's ineffective assistance of counsel claims, this expression of state law is binding on this Court.  *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999).  *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action.").  Thus, any objection to the instructions would have been futile, and it is well established that counsel cannot be deemed ineffective for failing to raise meritless objections.  *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c.  Issues Relating to Fitchett Testimony

Petitioner next contends that counsel was ineffective for failing to prepare for trial and for failing to obtain witnesses in his defense.  Specifically, he contends that counsel was ineffective for failing to secure Fitchett as a witness and for stipulating to Fitchett's unavailability.  As explained above, however, the trial court properly determined that Fitchett was unavailable as a witness because he would invoke his Fifth Amendment right not to testify.  Petitioner does not suggest any argument counsel could have made in lieu of stipulating to Fitchett's unavailability that would have compelled Fitchett's testimony.  Thus, petitioner cannot show that he was prejudiced by counsel's stipulation.

Petitioner also contends that counsel was ineffective for waiving his rights to a public trial and to be present because the matter of Fitchett's testimony was discussed and resolved in conferences between the court and the parties.[8]  These arguments are without merit.  As to petitioner's presence, it is true that "[a] criminal defendant has a constitutional right to be 'present at all stages of the trial where his absence might frustrate the fairness of the proceedings.'"  *United States v. Riddle*, 249 F.3d 529, 534 (6th Cir. 2001) (quoting *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975)); *see also*, *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).  However, a defendant's presence is required only at "critical stages" of the proceedings–that is, only "to the extent that a fair and just hearing would be thwarted by [the defendant's] absence."  *Snyder v. Massachusetts*, 291

---

[8]On the record, counsel indicated that he had spoke with Fitchett's attorney, who indicated that Fitchett, if called, would invoke his Fifth Amendment privilege and refuse to testify.  The trial court noted for the record: "And it was the interpretation that he would be then, on her advice, if he didn't want to testify, which he indicated, both last week and again this week, that he didn't, that he would be taking the Fifth Amendment so as not to incriminate himself.  And it's my understanding that the parties are stipulating that that's what he would do if he were forced to come in here today or tomorrow or at any time this week and take the stand, outside the presence of the jury, that he would raise the protection against self-incrimination."  Trial Tr., Vol. II, at 94.

U.S. 97, 108 (1934); *see also*, *United States v. Gagnon*, 470 U.S. 522, 526 (1985). Thus, "a defendant is not entitled to be personally present at every proceeding in the case." *United States v. Mouzin*, 785 F.2d 682, 704 (9th Cir. 1986). Rather, in reviewing claims alleging a denial of the right to be present, "courts assume that the defendant's attorney will represent the defendant's interests in noncritical proceedings." *Id*. Here, petitioner had no right to be present at the in-chambers conferences concerning the availability of Fitchett. The conference addressed only a preliminary question of law, and a defendant generally has no personal right to be present at in-chambers or sidebar conferences addressing such questions. *See Tafoya v. Tansy*, 9 Fed. Appx. 862, 872 (10th Cir. 2001); *United States v. McCoy*, 8 F.3d 495, 496-97 (7th Cir. 1993); *United States v. Jorgenson*, 451 F.2d 516, 521 (10th Cir. 1971); *cf. Stincer*, 482 U.S. at 745-47 (no personal right to be present at pretrial hearing to determine competence of child witnesses where hearing addressed solely the competence (*i.e.*, admissibility) question and defense counsel was present). The pre-trial conference was not a critical stage requiring petitioner's presence because petitioner "could have done nothing had [he] been at the conference, nor would [he] have gained anything by attending." *Gagnon*, 470 U.S. at 527. Because petitioner had no constitutional right to attend the conference, counsel was not ineffective for failing to secure his presence.

Nor was petitioner deprived of his right to a public trial. A criminal defendant has a constitutional right, guaranteed by the Public Trial Clause of the Sixth Amendment, to an open and public trial. *See Waller v. Georgia*, 467 U.S. 39, 44-47 (1984). In *Waller*, the Court explained the benefits secured to an accused by a public trial: "'that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibilities and to the importance of their functions.'" *Id*. (quoting *In*

*re Oliver*, 333 U.S. 257, 270 n.25 (1948)).  The Court also explained that "a public trial encourages witnesses to come forward and discourages perjury." *Id.*  Nevertheless, the courts have uniformly held that "[w]hile a defendant generally has a Sixth Amendment right to a public trial, in certain situations the exclusion of . . . the public can be too trivial to amount to a violation of the Sixth Amendment right." *United States v. Izac*, 239 Fed. Appx. 1, 4 (4th Cir. 2007) (citing *United States v. Perry*, 479 F.3d 885, 890 (D.C. Cir. 2007); *see also*, *Carson v. Fischer*, 421 F.3d 83, 92-93 (2d Cir. 2005); *United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003); *Braun v. Powell*, 227 F.3d 908, 918 (7th Cir. 2000).  To be clear, this triviality rule is not the same as a finding of harmless error, which is precluded by *Waller*.  The triviality standard does not amount to a finding that there was error but that it was harmless; rather, it amounts to a finding that "the exclusion cannot be characterized properly as implicating the constitutional guarantee." *Braun*, 227 F.3d at 918.  In the case of a trivial closure, the analysis turns on whether the conduct at issue "subverts the values the drafters of the Sixth Amendment sought to protect," *Smith v. Hollins*, 448 F.3d 553, 540 (2d Cir. 2006), namely: "1) to ensure a fair trial; 2) to remind the prosecutor and the judge of their responsibility to the accused and the importance of their functions; 3) to encourage witnesses to come forward; and 4) to discourage perjury." *Peterson*, 85 F.3d at 43 (citing *Waller*, 467 U.S. at 46-47); *see also*, *Braun*, 227 F.3d at 918.  Here, the exclusion of the public from the discussion between the parties and the court regarding Fitchett's availability did not subvert the values protected by the public trial guarantee.  The discussions concerned a legal matter regarding whether a witness would testify, and did not involve the taking of any evidence.  Generally, "[n]on-public exchanges between counsel and the court on . . . technical legal issues and routine administrative problems" do not implicate the Public Trial Clause. *United States v. Norris*, 780 F.2d 1207, 1210

52

(5th Cir. 1986). Because petitioner cannot show that he was deprived of his right to a public trial, he cannot show that counsel was ineffective. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 3. Appellate Counsel (Claim XI)

Finally, petitioner contends that appellate counsel was ineffective for failing to raise on direct appeal the claims that he raised in his motion for relief from judgment. This claim is without merit. Counsel raised significant claims on direct appeal, and as explained above each of petitioner's claims is without merit. Thus, petitioner cannot show that any of the omitted claims were clearly stronger than the claims counsel chose to pursue. Nor, for the same reason, can petitioner establish prejudice by showing a reasonable probability that the omitted claims would have succeeded on appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### L. Recommendation Regarding Certificate of Appealability

### 1. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack*

53

*v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a

54

recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  As explained above, there was sufficient evident to show that petitioner committed the drug sales for the purpose of financial gain, and to show that he conspired with Fitchett to deliver the drugs. Further, it is clear that petitioner's challenge to the "pattern of racketeering activity" element raises a challenge to the state court's interpretation of a state statute that is not cognizable on habeas review.  Thus, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable.  Because petitioner's challenge claim that the predicate acts constitute necessarily included lesser offenses is a noncognizable state law claim, and because the Michigan legislature clearly intended multiple punishments for engaging in a criminal enterprise and commission of the underlying predicate acts, the resolution of petitioner's second claim is not reasonably debatable. As explained above, it is clear that Fitchett's statements, made in furtherance of the conspiracy, do not constitute testimonial hearsay, and thus the resolution of petitioner's confrontation claim is not reasonably debatable.  Likewise, well established law makes clear that petitioner was not denied the right to present a defense by Fitchett's invocation of his privilege against self-incrimination, nor by the exclusion of Fitchett's plea statements under Rule 804(b)(3).  Thus, the resolution of this claim is not reasonably debatable.  Because petitioner cannot show any error in the trial court's jury instructions, the resolution of his instructional error claim is not reasonably debatable.  Likewise, because petitioner cannot show that the trial court actually relied on any materially false information in imposing sentence, the resolution of petitioner's sentencing claim is not reasonably debatable.

Because actual innocence standing alone provides no basis for habeas relief, and because in any event Fitchett's affidavit is not the type of new, reliable evidence sufficient to demonstrate actual innocence, the resolution of petitioner's actual innocence claim is not reasonably debatable. Finally, the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable, for the reasons explained above. Accordingly, the Court should deny petitioner a certificate of appealability.

M.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

56

objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: April 15, 2014                          s/Paul J. Komives
                                              PAUL J. KOMIVES
                                              UNITED STATES MAGISTRATE JUDGE


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on April 15, 2014.


                                              s/ Kay Doaks
                                              Case Manager